# No. 24493

## Elizabeth F. Carlson v. John R. Carlson
(497 P.2d 1006)

Decided May 15, 1972. Rehearing denied June 26, 1972.

Vincent Cristiano, Virginia Malloy, for plaintiff in error.

William Albion Carlson, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE ERICKSON.

This writ of error seeks review of permanent orders which were entered by the court in a divorce case after extended hearings were held before a master. The master made his report, and the trial court, after overruling objections which the wife made to the master's report, adopted the report as the order of the court. The wife claims that the court's order relating to permanent orders shows an abuse of discretion which requires reversal. We agree and reverse.

The record discloses that the marriage between the parties, although not a happy one, was of eighteen years' duration. The marriage terminated in a so-called double divorce when the trial court found that both parties had proven the allegations that they had made in support of their respective claims for a divorce. C.R.S. 1963, 46-1-7. Two sons were born as the issue of the marriage, one of whom was fifteen and the other sixteen at the time of the divorce. In addition, the wife's son by a former marriage was adopted by the

husband. When temporary orders were issued by the trial court, the wife was granted custody of the three children, subject to the husband's reasonable rights of visitation. The trial court's temporary orders also provided for alimony and support in the amount of $650 per month and included an order that directed the husband to make all payments on the family home (including a $232 per month house payment) and to pay all bills incurred by the wife prior to the separation.

The court appointed a master pursuant to the stipulation of the parties. In our opinion, masters should not be appointed as a routine matter in divorce cases where the issues are not complex and the facts are not complicated. *Los Angeles Brush Manufacturing Corp. v. James,* 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481 (1927); *Johnson Fare Box v. National Rejectors, Inc.,* 269 F.2d 348 (8th Cir. 1959). The wording of C.R.C.P. 53 relating to the appointment of a master is clear and provides:

"(b) *Reference.* A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it."

In this case, the reference to a master created an unjustified expense when the limited assets and the financial condition of the parties is recognized. At the time the court entered permanent orders, the parties' only substantial asset was a house. The master found that the house that the parties had maintained had an equity of approximately $9,000 and was subject to a deed of trust of approximately $20,000. He recommended, therefore, that the home be sold and that the proceeds be used to pay the obligations of the parties that existed at the time of their separation with the balance to be distributed equally between the parties, after the wife's attorneys' fees and the master's fees and court costs were paid. The wife's attorneys were awarded $1,900, and the court set the master's fee at $2,500 and ordered the court

reporter's charge of $403.80 paid. With the existing obligations and the deductions which were made, there was virtually nothing to divide. The parties had lived a country club existence and were in debt at the time the divorce action was commenced. The dilution of the assets of the parties by a substantial master's fee was not in the best interest of either party. The record wholly fails to support a master's fee of $2,500.

Unfortunately, an affidavit relating to the financial condition of a party was not filed by one of the parties. We have held that a court may proceed when there has been a failure of a party to comply with the local rules of the district court which require that affidavits of financial condition be filed. *Sall v. Sall*, 173 Colo. 464, 480 P.2d 576 (1971). However, affidavits which complied with the rule would have made the parties' financial plight clear in the first instance and would have forewarned the court of the relatively simple issues which were involved in the permanent orders hearing.

Apart from the house, the only other assets that were to be divided were the three cars that the parties maintained and the household goods which were located in the family home. The master concluded that the wife should be awarded the 1966 Thunderbird which she was driving, subject to the payment of an existing mortgage of $4,100. He also recommended that the husband should be given possession of an unencumbered 1957 Cadillac and a 1964 GMC pickup, subject to any encumbrance which might exist against the pickup. He found that the household goods should be awarded to the wife.

The final recommendation of the master related to alimony, support, and custody. In considering these issues, the master took evidence that established that the parties and their children had lived beyond their means and were, at the time permanent orders were entered, nearly wholly dependent upon the husband's income for their existence. At the time permanent orders were entered, the husband was receiving a gross monthly income of $3,027.50, and a net monthly salary of $2,234.64, and was provided with prepaid

life insurance in the face amount of $100,000 and a pension fund. The wife maintained the family home, and although she dabbled in real estate, she had no special skills or ability to earn money and had no funds of her own. It is also clear that at the inception of the marriage, the wife had assets which were valued at $70,000, which the parties dissipated during the marriage.

At the time the master took evidence, the parties had agreed that the wife would have the custody of the two sons born as the issue of the marriage and that the husband would have the custody of his adopted son. The master ordered that child support of $330 per month be paid for the two children which were to be awarded to the wife and that the wife should be paid alimony in the amount of $300 per month for a period of not to exceed one year, with payments to commence on May 18, 1968.

There is no mathematical formula for establishing a just and equitable property settlement or alimony or support. The granting of alimony, the awarding of support, and the division of property in divorce proceedings are matters which lie within the sound discretion of the trial court, and unless the trial court abuses its discretion, the judgment of the trial court must be sustained. *Hyde v. Hyde,* 169 Colo. 403, 457 P.2d 393 (1969); *Reap v. Reap,* 142 Colo. 354, 350 P.2d 1063 (1960). *See also,* Annot., "Adequacy of amount awarded as permanent alimony where divorce is or has been granted," 1 A.L.R.3d 123 (1965); Annot., "Adequacy of amount of money awarded as child support," 1 A.L.R.3d 324 (1965); Annot., "Propriety and effect of undivided award for support of more than one person," 2 A.L.R.3d 596 (1965); Annot., "Adequacy or excessiveness of amount of money granted as combined award of alimony and support," 2 A.L.R.3d 537 (1965).

Moreover, once the court has referred the determination of permanent orders to a master, the court is bound to accept the master's findings of fact, unless clearly erroneous. C.R.C.P. 53(e)(2); *Brown v. Brown,* 161 Colo. 409, 422 P.2d 634 (1967). In the instant case, the master's report did not

contain findings of fact relating to many of the issues that would be significant to a determination of alimony, child support, and property settlement and was replete with conclusions. The bald conclusions of a master are not sufficient to support a recommendation or a court order based upon the recommendations. C.R.C.P. 53(e)(1); *see Brock v. Brock,* 281 Ala. 525, 205 So.2d 903 (1967); 5A *J. Moore, Federal Practice,* ¶ ¶ 53.10, 53.12(4).

 Alimony, support, and property settlement issues must be considered together to determine whether the court has abused its discretion. In making the determination, the court must consider a variety of factors, including whether the property was acquired before or after marriage, the efforts and attitudes of the parties towards its accumulation, the respective ages and earning abilities of the parties, the conduct of the parties during the marriage, the duration of the marriage, their stations in life, their health and physical condition, the necessities of the parties, their financial condition, and all other relevant circumstances. *Kraus v. Kraus,* 159 Colo. 331, 411 P.2d 240 (1966); *Nunemacher v. Nunemacher,* 132 Colo. 300, 287 P.2d 662 (1955); *Clark, Domestic Relations,* "Division of Property on Divorce," § 14.8, at 449 (1968).

 No one questions that it is difficult to estimate the prospects that the parties have to generate future earnings, but factors such as occupational experience, coupled with education, training, and business background should be considered in determining what division should be made of property. Fault of either or both of the spouses is not a factor to be considered in making a property settlement decree. *Kraus v. Kraus, supra.*

In reviewing the master's recommendation and the court order relating to the sale of the house, it becomes apparent that the deductions which were to be made from the proceeds of the sale were all but sufficient to exhaust the proceeds which would be available for division. The property settlement order which directed that the wife receive the 1966 Thunderbird subject to a mortgage of $4,100 is also

unrealistic in the light of her earning capacity and lack of funds to pay off the encumbrance against the car.

The master's recommendations which were adopted by the court relating to the limitation of alimony to a period of one year also poses a serious question. C.R.S. 1963, 46-1-5. Whether the court should award periodic alimony or alimony in gross, as the court did in this case, is generally held to be a matter within the sound discretion of the court. *See Cummings v. Lockwood,* 84 Ariz. 335, 327 P.2d 1012 (1958). The granting of alimony in gross, or lump-sum alimony, as it is sometimes called, provides a definite and final judgment which the court cannot later modify. For that reason, periodic payments are normally preferred, because such payments can be modified if a change in circumstances occurs. *Yandell v. Yandell,* 39 So.2d 554 (Fla. 1949); *Clark, Domestic Relations,* "Alimony, Relevant Factors in Awarding Alimony," § 14.5, at 441 (1968). It is clear to us that in the absence of special circumstances which require or make a lump-sum award of alimony proper, or a compelling reason that necessitates the desirability for such an award, a lump-sum or gross award of alimony should not be made. *Stefonick v. Stefonick,* 118 Mont. 486, 167 P.2d 848, 164 A.L.R. 1211 (1946). In the instant case, the wife's ability to support herself was, at best, problematical, and the husband had adequate income to provide for her until she was able to support herself or until she remarried.

It is also clear to us that the award of child support was unrealistic and was too low, in view of the court's order on property settlement and alimony, and the facts which were developed in the hearing before the master reflect a manifest abuse of discretion.

Accordingly, we reverse the trial court's order as to alimony, child support, and property settlement and remand this case to the trial court for a rehearing before the court on permanent orders. We remand for further proceedings not inconsistent with this opinion and direct that the fee set for the master be reconsidered, taking into account the time spent by the master, the complexity of the case, the amount

of property involved, and such other factors as the trial judge may deem relevant.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.