In re MARRIAGE OF ROSE PAPECK, Petitioner-Appellee, and RAYMOND PAPECK, Respondent.—(RETIREMENT BOARD FIREMEN'S ANNUITY AND BENEFIT FUND, Respondent-Appellant.)

First District (5th Division)    No. 79-1630

Opinion filed April 16, 1981.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Regan D. Ebert, Assistant Corporation Counsel, of counsel), for appellant.

J. Roger Sewell, Seymour C. Axelrood, and Paul Ben Axelrood, all of Sewell & Axelrood, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

In a supplemental judgment following the dissolution of marriage between Rose and Raymond Papeck, the circuit court ordered respondent Retirement Board Firemen's Annuity and Benefit Fund (fund) to restore to Mrs. Papeck (petitioner) $17,765.39 that she had previously paid into the fund on behalf of her husband. On appeal, respondent raises these

issues: (1) the circuit court lacked jurisdiction to order the pension board to refund the money to petitioner; (2) the pension fund's monies cannot be attached or garnished; (3) the pension fund's monies cannot be refunded prior to termination of employment; (4) the circuit court erred in allowing provisions of the marriage dissolution act to prevail over the provisions of the Firemen's Pension Fund Act which exempt the fund from attachment or garnishment; and (5) the $17,765.39 was marital property. We reverse in part and remand.

The parties were married in July of 1977. Petitioner filed the dissolution petition on April 28, 1978, naming as a party defendant the Chicago Fire Department as stakeholder of the $17,765.39 which she had paid into the pension fund during the marriage.[1] The circuit court denied the pension fund's motion to dismiss. On December 29, 1978, the court entered a judgment dissolving the parties' marriage.

A hearing on the parties' property rights was held on July 13, 1979, at which time petitioner moved for entry of a supplemental judgment against the pension fund. She contended that the money she paid into the fund was her nonmarital property, which should be directly refunded to her. The pension board filed its opposition to the motion, contending that there was a strict statutory prohibition against attachment or garnishment of pension funds. Petitioner's responsive petition alleged that the pension board's discretionary powers empowered it to refund her money.

Following oral arguments on the motion on August 28, 1979, the trial court ruled in favor of petitioner and entered an order directing the pension fund to pay her the money. Following the denial of its motion to vacate the August 25 supplemental judgment, the pension board brought this appeal.

OPINION

The dispositive issue in this case is whether the circuit court, in distributing property pursuant to a marriage dissolution action, has the power to order the firemen's retirement fund to refund money paid into it by a nonemployee spouse. We believe that it does not.

■■ We first consider respondent's challenge to the trial court's jurisdiction. The Firemen's Annuity and Benefit Fund Act (Act) (Ill. Rev. Stat. 1979, ch. 108½, pars. 6—101 through 6—223) governs the creation and administration of the fund. Exclusive original jurisdiction over all matters relating to the fund is vested in the Retirement Board (Ill. Rev. Stat. 1979, ch. 108½, par. 6—185) and judicial review of final administrative decisions

---

[1] Petitioner contends that she only lent this money to her former husband, who agreed to repay her at any time she deemed it necessary. Her payment of $17,765.39 reinstated him in the Fireman's Retirement and Annuity program. See Ill. Rev. Stat. 1979, ch. 108½, par. 6—159.

is governed by the Administrative Review Act. (Ill. Rev. Stat. 1979, ch. 108½, par. 6—222; see ch. 110, pars. 264 through 279.) Respondent's first argument is that the court preempted the Board's express jurisdictional power, under section 6—185, to determine all claims involving the fund. We agree that the Board is primarily responsible for the fund's administration. We must distinguish, however, the circuit court's jurisdiction over dissolution actions. It is clearly established that Illinois circuit courts have jurisdiction to hear all justiciable issues. (Ill. Const. 1970, art. VI, §9; *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187; *In re Marriage of Peshek* (1980), 89 Ill. App. 3d 959, 412 N.E.2d 698.) In the instant dissolution action, the trial judge had the power to equitably divide the parties' property pursuant to section 503 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503). Therefore, the trial court was within its discretion in determining that the money which petitioner paid into her spouse's retirement fund was property[2] that should be allocated to her upon the dissolution of the marriage. Nevertheless, we believe that the trial court was statutorily precluded from ordering the Board to pay petitioner $17,765.39 from the fund. We arrive at this conclusion after considering sections 6—213 and 6—158 of the Act, as well as pertinent case law.

Section 6—213 provides, in pertinent part:

> "All pensions, annuities, refunds and disability benefits granted under this Article and every portion thereof, are exempt from attachment or garnishment process and shall not be seized, taken, subjected to, detained, or levied upon by virtue of any execution or any process or proceeding whatsoever issued out of or by any court in this State, for the payment and satisfaction in whole or in part of any debt, damage, claim, demand, or judgment against any pensioner, annuitant, applicant for a refund or other beneficiary hereunder.

> ✱ ✱ ✱

> The board, in its discretion, however, may pay to the wife of any aforesaid person, such proportion of her husband's annuity, pension, refund or disability benefit as any court of equity may order, or such an amount as the board may consider necessary for her

---

[2] The trial court considered the $17,765.39 to be petitioner's "nonmarital" property which she received from the sale of real estate she had owned .before her marriage to Raymond Papeck. The court noted, however, that even if it were classified as "marital property" under section 503 of the Marriage and Dissolution of Marriage Act, the full amount of money could be awarded to her as her "just proportion." (See Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) Therefore, the court concluded that the result would be the same regardless of how the money was classified. For a discussion of the practical and legal effects of classifying property as "marital" or "nonmarital," see Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B. J. 388 (1978).

support or for the support of herself and the children, in the event of his failure to provide such support."

The first paragraph of section 6—213 explicitly precludes creditors from reaching pensions, refunds, and other benefits under the Act. Our supreme court upheld the constitutionality of this provision against the challenge that it violated the equal protection clause of the constitution by denying to creditors the same rights they have against nonexempt private pensions. (*Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.) The court discussed several distinctions between public and private pension funds which justify the legislature's immunization of public pension funds from garnishment and attachment.

In the pending case, respondent urges us to apply the *Friedman* court's reasoning to bar petitioner's claim. If it is forced to comply with the trial court's order, respondent argues, the fund would become vulnerable to numerous similar claims. This would impair the fund's investment freedom because it would need to reserve money to satisfy judgments against it. Petitioner believes, however, that the anti-attachment provision is inapplicable to her because of her status as a divorced wife, as distinguished from a third-party creditor. To support her contention, she cites the language of section 6—213 which grants the Board discretion to make support payments to the wife of a recipient of pension benefits, "as any court of equity may order." She argues that since the Board is authorized to pay support to an employee's wife, it must also be authorized to repay money received from an ex-wife. She contends that the fund's freedom to invest money would be affected to the same extent whether the Board pays a wife or an ex-wife.

■■ We find petitioner's argument unpersuasive. The language which empowers the Board to award support payments to a pensioner's wife and children is limited to "the event of his failure to provide such support." The logical interpretation of this exception to the anti-attachment language is to permit the Board, either in its discretion or pursuant to an equitable order from a court, to pay a portion of a pensioner's benefits directly to a spouse in such extraordinary circumstances that he fails to support her during an ongoing marriage. In such a situation, the legislature undoubtedly intended to forestall any attempts to insulate an employee's pension benefits from being used to satisfy his legal obligation to support his family.[3] We therefore decline petitioner's invitation to extend this

---

[3] See Ill. Rev. Stat. 1979, ch. 40, par. 1101, which imposes liability on the party who refuses to support his spouse or minor children. A defendant under this section can be charged with a Class A misdemeanor, in addition to being held civilly liable to the Illinois Department of Public Aid for the amount of general assistance provided to his spouse. See also par. 1106 (court may enter a temporary support order assigning part of a defendant's salary, in lieu of other security); par. 1111 (actions for a wife's support can be prosecuted during an ongoing marriage).

narrow family support exception to include her claim as an ex-wife who seeks to recover a direct refund of money she voluntarily paid in to reinstate her former husband in the pension plan.

Under the Act, moreover, a refund is only available to an employee under certain conditions. (Ill. Rev. Stat. 1979, ch. 108½, par. 6—158.) Section 6—158(b) states that a fireman, after leaving the service, "shall be entitled to refund until he re-enters service or until his annuity is fixed." In the instant case, Papeck is not presently entitled to a refund because he is employed as a fireman. If he has no rights to a refund under section 6—158, it is difficult to justify permitting his former wife, a nonemployee spouse, to attain greater rights than he.

■■ The fund is not in the position of a stakeholder, liable to one or more claimants for monies held on deposit. Rather, the fund's receipts and disbursements are strictly governed by the detailed statutory scheme. The provision which exempts the fund from the reach of creditors reflects the legislature's desire to preserve the integrity of the fund so as to protect its beneficiaries—the employees and their families. (See *Friedman*.) We are not suggesting that petitioner has no right to recover the money directly from her former husband. We hold, however, that the claim she asserts against the fund *itself* is barred by section 6—213; in substance, it is the claim of a creditor.

■■ We caution that our holding is not to be construed as affecting the rights of nonemployee spouses to receive a proportion of their husband's pension benefits as part of the marital property. (See *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.) Under Illinois law, pension benefits are property interests rather than mere "expectancies," regardless of whether they are matured, vested, or nonvested, contributory or noncontributory. (*Hunt*.) In accordance with several other jurisdictions, we construe pension rights as "deferred compensation" in the nature of contract rights, subject to the terms of the particular plan. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; *Hunt*; *Musser*.) Thus, even if pension benefits are contingent upon future events and may never become payable, they are not reduced to mere "expectancies." (*Brown*; *Hunt*.) The significance of this judicial recognition that pension interests are "property" is this: The spouse of the plan participant, upon dissolution of the marriage, obtains an actual *co-ownership* interest in the benefits as marital property. Thus a divorced wife is not in the position of a mere "creditor," and the anti-attachment provision of the Firemen's Act does not bar her claim to a certain proportion of the benefits. (See *In re Marriage of Uluhogian* (1980), 86 Ill. App. 3d 654, 408 N.E.2d 107 (anti-attachment provision of Illinois Pension Code does not prohibit consideration of public pension funds as marital property); *Hunt* ("anti-assignment" provision of Federal Employment Retirement Income

Security Act does not prevent private pension plans from being treated as marital property for purposes of marriage).) As we stated in *Hunt*, the trial court will determine the present value of the pension interest allocable as marital property and may award it to the employee spouse, giving the nonemployee spouse an offsetting award from other marital property. If present value is too difficult to determine, or if there is a lack of other marital property to award the nonemployee spouse, the trial court has the discretion to allocate to each spouse "an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable." *Hunt*, 78 Ill. App. 3d 653, 663, 397 N.E.2d 511, 519.

From the foregoing analysis it becomes clear that the property distribution provision of the Marriage and Dissolution of Marriage Act does not conflict with the anti-attachment provision of the Firemen's Act. When pension benefits are credited to a nonemployee spouse pursuant to a dissolution proceeding the fund itself is not affected. Nor are the husband's individual rights in the account altered, because he still is entitled to his portion, as marital property.

■■ Respondent's final contention is that the court erred in classifying the $17,765.39 as nonmarital property. According to respondent, this money was transmuted into a marital asset when petitioner paid it into the pension fund. The money combined with Raymond Papeck's services and seniority in the fire department and became a marital asset to be shared between the parties. Consequently, respondent argues, petitioner is not entitled to recover her share as nonmarital property.

We disagree with respondent's argument. Section 503 of the Marriage and Dissolution of Marriage Act lists six types of nonmarital property, including "property acquired in exchange for property acquired before the marriage." (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(2).) The record indicates that the source of the money was proceeds from the sale of real estate petitioner owned prior to the marriage. She claims to have intended only to lend the money to her husband, to permit his reinstatement in the firemen's pension plan. Moreover, the marriage lasted only nine months before petitioner filed for dissolution. It is clear that under these facts, the trial court could have determined that the petitioner's money retained its "nonmarital" character. While we agree that in certain circumstances the commingling of nonmarital and marital assets may indicate an intention to treat the property as "marital property" (see *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517 (joint savings account)), in other circumstances the court may award parties refunds of their identifiable, nonmarital assets which they have exchanged for jointly held property. *In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 389 N.E.2d 963 (evidence established that portion of wife's contribution of nonmarital assets to marital home was not intended as a gift to her husband and

would thus be refunded to her upon dissolution of the marriage). See also *In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 407 N.E.2d 1045 (full value of marital home was properly classified as marital property and awarded to wife; husband was not entitled to refund of his nonmarital funds used to pay for it); *In re Marriage of Lee* (1979), 88 Ill. App. 3d 1044, 410 N.E.2d 1183 (nonmarital residence is transmuted to marital property where there has been a significant contribution of marital funds to the property). *Cf. In re Marriage of Pederson* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659 (in view of short duration of the marriage, trial court did not abuse its discretion in awarding wife a share of proceeds from sale of marital home which represented amount by which her nonmarital contribution to purchase of the house exceeded husband's).

In the pending case the trial court determined that petitioner was entitled to the full amount of her contribution to the fund. As the trial court noted, it could award her the entire $17,765.39 whether the money was classified as "nonmarital" or "marital." Under the Marriage and Dissolution of Marriage Act, it is possible for one party to receive *all* the marital property as his or her "just proportion," rather than one-half or some other percentage. (See *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065; *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.) In light of the circumstances of this case, however, we do not believe that the court abused its discretion in classifying the money as nonmarital property.

As we have held, petitioner cannot recover this money from the firemen's retirement fund. She may, however, pursue whatever remedies she may have against Raymond Papeck, as his creditor, or petition the trial court to enter an appropriate order for repayment.

For the foregoing reasons we conclude that the trial court erred in ordering the firemen's retirement fund to refund petitioner's money. We must therefore reverse that part of the order. We affirm the court's finding that the money is petitioner's nonmarital property, and remand this cause for proceedings consistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

LORENZ and MEJDA, JJ., concur.