In re the MARRIAGE OF Leisa T. GRUBB, Appellee,

and

William E. Grubb, Appellant.

No. 84CA0320.

Colorado Court of Appeals, Div. II.

Jan. 23, 1986.

Rehearing Denied Feb. 27, 1986.

Certiorari Granted (Leisa Grubb) July 7, 1986.

Epstein, Epstein and Lozow, P.C., Frederick Epstein, Peter L. Franklin, Denver, for appellee.

Roath & Brega, P.C., Robert E. Kendig, Denver, for appellant.

BABCOCK, Judge.

In this dissolution of marriage action, husband appeals the judgment of the trial court regarding division of property and award of maintenance. We reverse.

Husband first contends that the trial court erred in considering his private pension plan as marital property. We agree.

Since 1974, husband's private pension plan has been supported entirely by employer contributions. Prior to 1974, the plan required employee contributions. Voluntary employee contributions have always been possible, but they are held separately and treated separately at retirement. Husband began work for his employer in 1950, and, as of the date of dissolution, had made required and voluntary contributions totaling some $32,500.

By its terms, the pension plan vests 100% after ten years service, but does not mature until the employee becomes eligible for immediate retirement benefits. Here, husband was 60 years old at the time of dissolution, had worked for the employer for 35 years, and was eligible for 100% benefits under the plan at the time of the dissolution. If he retired immediately, he could receive his benefits as a lump sum, or he could elect from periodic payment plans.

However, husband was still employed, and testified that he had no plans to retire in the near future. Under the terms of the plan, if he died unmarried without actually retiring, the only benefits that would be payable to his estate would be the amount of his required and voluntary contributions. The amount contributed by the employer would be lost. Thus, the employer's contribution to husband's pension plan, although vested and mature, was subject to divestment if he died before retiring.

Moreover, there was uncontradicted testimony in the record that the plan, at the

time of dissolution, lacked cash surrender value, loan value, redemption value, lump sum value, or value realizable after death. Also, it was non-assignable and non-alienable under the Employment Retirement Income Security Act of 1974 (ERISA).

■ Employer-supported pension plans which are subject to divestment are not marital property under § 14–10–113, C.R.S. See Ellis v. Ellis, 191 Colo. 317, 552 P.2d 506 (1976); In re Marriage of Laychak, 704 P.2d 874 (Colo.App.1985); In re Marriage of Ward, 657 P.2d 979 (Colo.App. 1982).

■ In order to be considered marital property, a pension plan must have some indicia of "property," such as cash surrender value, loan value, redemption value, lump sum value, or value realizable after death. Ellis v. Ellis, supra. None of these factors are present as to the employer's contribution to the plan before us, and therefore, the trial court erred in finding that this portion of the plan was marital property. Hence, only the husband's required and voluntary contributions to the plan are marital property; such contributions are subject to division because they are not contingent funds, they were contributed out of marital income, and the husband or his estate must receive them at some time in the future. See In re Marriage of Mitchell, 195 Colo. 399, 579 P.2d 613 (1978); In re Marriage of Serdinsky, 709 P.2d 69 (Colo.App.1985).

Wife, however, argues that the pension plan is a chose in action and, thus, is marital property. We must reject this contention.

■ We are aware that some jurisdictions characterize a pension plan as a chose in action. See, e.g., In re Marriage of Brown, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). We, however, view a pension plan as a resource of the husband in the nature of income to be received in the future, In re Marriage of Ellis, 36 Colo.App. 234, 538 P.2d 1347 (1975), aff'd sub nom., Ellis v. Ellis, supra, and as such, it is a factor to be considered in

fixing the amount of maintenance and child support rather than as an item of marital property.

■ Moreover, unlike other jurisdictions, whose laws allow their trial courts to order a contingent, future disbursement of money, see, e.g., In re Marriage of Brown, supra; Janssen v. Janssen, 331 N.W.2d 752 (Minn.1983), the law in Colorado disallows an award of property which might be acquired by the other spouse after the order for a division of property has been made. Menor v. Menor, 154 Colo. 475, 391 P.2d 473 (1964); In re Marriage of Ellis, supra. Therefore, we must reject wife's argument that the pension plan should be considered as a chose in action.

Husband next argues that the trial court erred in not considering tax consequences in the division of property. We disagree.

■ While it is appropriate in certain circumstances for the trial court to consider tax consequences in valuing assets, that decision must be based on the totality of the circumstances and also rests in the trial court's sound discretion. See In re Marriage of Bayer, 687 P.2d 537 (Colo.App. 1984). Here, the husband's testimony about the tax consequences of selling his stock was speculative and was based on hypothetical situations. Wife's expert testified that several factors could affect the ultimate determination of husband's tax liabilities. Thus, although a tax liability was certain, the amount of such liability was speculative. Under these circumstances, we hold that the trial court did not abuse its discretion in not considering the tax consequences when it ordered the stock transferred to the wife. See In re Marriage of Bayer, supra.

We do not address husband's contention regarding the award of maintenance to wife because our holding on the issue of husband's pension plan necessitates rehearing on both the issue of property distribution and the interrelated issue of maintenance. See Carlson v. Carlson, 178 Colo. 283, 497 P.2d 1006 (1972).

The judgment is reversed and the cause is remanded for rehearing on the issues of division of property and award of maintenance.

SMITH, J., concurs.

STERNBERG, J., specially concurs.

STERNBERG, Judge, specially concurring.

I concur in the majority opinion because the current state of the law requires this harsh result; however, in my view, it is time for this jurisdiction to review its treatment of pension plans in domestic relations cases because of the obvious injustices that occur by application of outdated property law analysis.

The modern economic reality is that private pension and retirement plans are not gratuities derived from the beneficence of the employer; rather, they are an integral part of the compensation package for which employees work, and as such, they are properly part of the consideration earned by the employee during the marriage. *See In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). This is true regardless of whether the pension plan is entirely supported by the employer, or whether there is a mandatory employee contribution in addition to an employer contribution. To draw distinctions between the types of pension plans, as our law now does, is artificial, unnecessary, and promotes inequities. Colorado, as did California in *In re Marriage of Brown, supra*, should limit or reverse previous authority and recognize that all pension plans are choses in action, and thus, are marital property subject to division under § 14–10–113(2), C.R.S.

In facing up to the conclusion that earlier authority erred in not treating unvested pension rights as property subject to division, the court in *Brown* stated:

"This characterization of pension rights has, and unless overturned, will continue to result in inequitable division of community assets. Over the past decade, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services ... it often represents the most important asset of the marital community."

Here, as is frequently the case, other than the residence of the parties, the only significant financial asset they acquired during the marriage is the pension plan. The husband worked for the employer since 1950 and is now 60-years-old, with the result being that the cash value of the plan is approximately $250,000. If he retired, he could receive this quarter million dollars in a lump sum, or at his election, by periodic payments.

Husband points out that if he keeps working and dies before he retires, he loses the value of this asset. However, because the court can assure that the risk of divestment is shared equally by the parties, as has been done in other states, this risk of possible divestment should not lead to ignoring the pension plan as a property asset. *See In re Marriage of Brown, supra; Janssen v. Janssen*, 331 N.W.2d 752 (Minn. 1983); *Hebron v. Hebron*, 116 Misc.2d 803, 456 N.Y.S.2d 957 (N.Y.Sup.Ct.1982); *In re Marriage of Papeck*, 95 Ill.App.3d 624, 51 Ill.Dec. 114, 420 N.E.2d 528 (1981).

In my view, it is no answer that the domestic relations court can overcome the obvious inequity of treating this pension plan as the sole property of the husband by ordering large maintenance payments. This "solution" just does not work in a case where the wife is employed or otherwise does not meet the threshold requirements for an award of maintenance contained in § 14–10–114(1)(a) and (b), C.R.S. *See In re Marriage of McVey*, 641 P.2d 300 (Colo. App.1981). Moreover, even if, as apparently is the case here, the wife does qualify under that statute for an award of maintenance, the husband's death or her remarriage could terminate that award.

Interpreting pension plans of the type at issue here as choses in action, in my view, is far preferable to the unfairnesses attendant to the present rules in Colorado. The underlying goal of a property distribution in a dissolution of marriage action is justly and equitably to give to each spouse a fair

share of the marital assets. Section 14–10–113(1), C.R.S.; *Carlson v. Carlson*, 178 Colo. 283, 497 P.2d 1006 (1972). That simply is not being accomplished under the present law in situations where pension plans of the type at issue are involved.