*In re* MARRIAGE OF HOWARD E. JOHNSTON, Plaintiff, and FRANCES JOHNSTON, Defendant-Appellee (Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago, Defendant-Appellant).

First District (3rd Division)   No. 1—89—2167

Opinion filed October 10, 1990.—Rehearing denied December 27, 1990.—Modified opinion filed January 2, 1991.

RIZZI, J., specially concurring.

Fagel, Haber & Maragos, of Chicago (Maynard B. Russell, Alvin D. Meyers, and Steven J. Teplinsky, of counsel), for appellant.

Doss, Puchalski & Keenan, Ltd., of Chicago (Owen L. Doss, Joseph D. Keenan III, and James M. Forkins, of counsel), for appellee Frances Johnston.

Theodore G. Karavidas, of Williston, McGibbon & Kuehn, of Barrington, for appellee Howard E. Johnston.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

This is an appeal from an order of the circuit court directing the Retirement Board of the Firemen's Annuity and Benefit Fund (Retirement Board), which was made a party to the action for the dissolution of the marriage of Howard and Frances Johnston, to comply with any qualified domestic relations order that might be entered in the future awarding a portion of Howard's pension to Frances for the remainder of her life. Although a motion to dismiss the appeal for lack of jurisdiction was previously denied by this court, we determine today that the appeal must be dismissed for lack of jurisdiction.

In 1987, Howard and Frances each filed petitions for the dissolution of their. marriage which were consolidated by agreed order. Howard was a retired Chicago firefighter who had been receiving annuity payments since January 18, 1986, from the Firemen's Annuity and Benefit Fund pursuant to the Illinois Pension Code (Code) (Ill. Rev. Stat. 1987, ch. 108½, par. 6—101 et seq.). On February 23, 1989, Frances filed a petition alleging that Howard's pension benefits were a marital asset and that she and her husband wanted to enter into a property settlement that would include an equal division of the pension benefits "so as to vest in Frances Johnston her share of the husband's pension for her life, notwithstanding Howard E. Johnston's prior demise." Frances further alleged that the Retirement Board had in the past opposed the division of pension benefits in dissolution proceedings, and she prayed for an order directing the Retirement Board to comply with any future qualified domestic relations order awarding "a portion of the pension benefits of Howard E. Johnston to Frances Johnston for her lifetime." The Retirement Board filed a motion for judgment on the pleadings which asserted that the Code did not provide benefits for a fireman's former spouse for the remainder of her life.

After submission of briefs and a hearing, the trial court denied the motion and held that the Code did not bar a qualified domestic relations order awarding a portion of Howard's pension benefits to Frances for her life. The trial court granted Frances' petition and ordered the Retirement Board to "comply with any QDRO order entered by this Court awarding a portion of the pension of HOWARD E. JOHNSTON to FRANCES JOHNSTON for her lifetime."

■■ ■ The law prohibits appeals from nonfinal orders unless specifically authorized by the supreme court rules. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171, 429 N.E.2d 483.) The Retirement Board's notice of appeal invoked Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)), which permits a party to appeal as a matter of right from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." However, as a prerequisite to appellate jurisdiction under Supreme Court Rule 307(a)(1), it must first be determined that the interlocutory order appealed from constitutes an injunction or has the "force and effect" of an injunction. (*In re A Minor* (1989), 127 Ill. 2d 247, 260, 537 N.E.2d 292.) Because we find that the trial court's order cannot be characterized as injunctive, we must dismiss the appeal.

■ The purpose of Rule 307(a)(1) is to provide for the interlocutory review of a court's exercise of its equitable power to grant injunctive relief and to prevent abuses of the power that could result in irreparable harm. (*Bohomolec v. Gieblewicz* (1971), 3 Ill. App. 3d 16, 18, 278 N.E.2d 202.) Whether an interlocutory order can be characterized as injunctive must be determined by examining the substance of the order rather than its form. *In re A Minor*, 127 Ill. 2d at 260.

■ In the case at hand, the relief granted in the trial court order is not injunctive in nature but, rather, the order is interlocutory because it merely declares the rights and obligations of the parties with respect to Howard's pension benefits. The trial court's order accomplishes nothing more than to command the Retirement Board to do what it would already have to do if the qualified domestic relations order were issued, *i.e.*, to obey the order unless it is overturned or to stand in defiance of the power of the court. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 173-74, 429 N.E.2d 483.) Moreover, the order is not of the kind that could cause irreparable harm to the Retirement Board if an appeal were not taken until the divorce decree were entered. If an immediate appeal

would be more helpful in advancing the proceedings below, appellate jurisdiction may be appropriately secured under Supreme Court Rule 308. (107 Ill. 2d R. 308.) Accordingly, we dismiss the appeal for lack of jurisdiction.

Appeal dismissed.

WHITE, J., concurs.

JUSTICE RIZZI, specially concurring:

I agree that this appeal should be dismissed for the reasons stated by the majority. In addition, however, I believe that this case cries out for a discussion relating to what is a qualified domestic relations order (QDRO). I also believe and suggest that the Illinois legislature should amend the Pension Code to provide for the assignment or alienation of plan benefits pursuant to defined Illinois QDROs. See Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*

Plainly, contrary to the assumption of both parties, the trial court could not and cannot enter a QDRO in this case. The order that was entered was drafted by the attorney for petitioner Frances Johnston. The order provides:

## "ORDER

This cause coming on to be heard on the Petition of the Defendant and Counter-Plaintiff, FRANCES JOHNSTON, for an order on the Defendant, the RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO (hereinafter 'THE BOARD'), finding and ordering that THE BOARD is bound by a Qualified Domestic Relations Order (hereinafter 'QDRO Order') entered herein; the Answer thereto of the Plaintiff and Counter-Defendant, HOWARD E. JOHNSTON, and the Defendant, THE BOARD; and THE BOARD's Motion for Judgment on the Pleadings; the Court having read the pleadings and the briefs filed by the parties, having heard arguments of counsel, and being fully advised in the premises; DOTH FIND:

1. That this court has jurisdiction over the Defendant, THE BOARD, and the subject matter hereof.

2. That Chapter 108½, §6—142(e) of the *Illinois Revised Statutes* is not a bar to a QDRO Order awarding to FRANCES JOHNSTON benefits from THE BOARD for the remainder of her life after HOWARD E. JOHNSTON's demise.

3. That THE BOARD is bound by and ordered to comply with any QDRO Order entered by this Court awarding a portion of the

pension of HOWARD E. JOHNSTON to FRANCES JOHNSTON for her lifetime.

IT IS THEREFORE ordered, adjudged and decreed as follows:

(A) That this Court has jurisdiction over the parties and of the subject matter hereof.

(B) That THE BOARD's Motion for Judgment on the Pleadings in its favor is denied.

(C) That Chapter 108½, §6—142(e) of the *Illinois Revised Statutes* is not a bar to a QDRO Order awarding to FRANCES JOHNSTON benefits from THE BOARD for the remainder of her life after HOWARD E. JOHNSTON's demise.

(D) That THE BOARD is bound by and ordered to comply with any QDRO Order entered by this Court awarding a portion of the pension of HOWARD E. JOHNSTON to FRANCES JOHNSTON for her lifetime."

The main problem with the above order is that it was entered in a case which involves the Firemen's Annuity and Benefit Fund, which does not have QDRO provisions. Neither the Pension Code nor any of the separate benefit plans covered by the Pension Code provide for QDROs.

QDROs came into existence with the adoption of the Retirement Equity Act of 1984 (REA). (See 29 U.S.C. §1001 (1988); Massler, *Qualified Domestic Relations Orders: A Statutory Analysis*, 19 Seton Hall 224 (1989).) Before the REA, Internal Revenue Code section 401(a)(13) disqualified pension or profit sharing plans if plan benefits could be assigned or alienated. The REA amended the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1954 by creating a limited exception to the prohibition of assignment or alienation of qualified plan benefits when a qualified domestic relations order (QDRO) is issued pursuant to State domestic relations law. See ERISA, 29 U.S.C. §§1001, 1056 (1988); I.R.C. §§401, 414 (1986).

Thus, the QDRO provisions only apply to pension plans which are subject to the assignment and alienation restrictions of ERISA and the Internal Revenue Code. (See I.R.C. §§414(d), 414(p)(9), 410(c)(A) (1986).) The Pension Code and most State and Federal pension and benefit plans are exempt from QDRO rules.[1] (I.R.C. §§414(d), 410(c)(A) (1986).) Many Federal pension plans, however, authorize State domestic relations

---

[1]See Social Security Act, 42 U.S.C. §659 (1986). For example, the Social Security Act preempts local law vitiating State court authority to divide social security benefits. The Social Security Act contains special provisions dealing with the rights of divorced spouses to obtain old age, disability, survivor and parents' benefits. See Massler, *Qualified Domestic Relations Orders: A Statutory Analysis*, 19 Seton Hall 229 (1989).

courts to divide pension benefits. These plans include military retirement benefits, railroad retirement benefits and civil service benefits. Other Federal plans must be analyzed according to their own individual terms and provisions. Massler, *Qualified Domestic Relations Orders: A Statutory Analysis*, 19 Seton Hall 224, 229 (1989).

Since the Pension Code does not provide for QDROs, it is clear that a QDRO could not be entered in this case. Another problem with the order that was entered in this case, however, is that it does not comply with the requirements of a QDRO even if this were a case in which a QDRO could be entered. ERISA, which applies to private pension plans, provides:

"(d) Assignment or alienation of plan benefits

(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

\* \* \*

(3)(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

(B) For purposes of this paragraph—

(i) the term 'qualified domestic relations order' means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term 'domestic relations order' means any judgment, decree, or order (including approval of a property settlement agreement) which—

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of

the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order." 29 U.S.C. §1056 (1988).[2]

Clearly, the order in the present case does not comply with the requirements of a QDRO. If an order does meet the requirements of a QDRO in a case involving a private pension plan under ERISA, the nonemployee divorced spouse would receive the marital property benefits provided for in the order or judgment directly from the fund or plan. This provision for direct receipt of the marital property benefits cannot be accomplished by court order in a case involving a pension plan under the Pension Code. (*In re Marriage of Papeck* (1981), 95 Ill. App. 3d 624, 420 N.E.2d 528.) This fact, however, does not mean that the nonemployee spouse cannot receive a portion of the employee spouse's pension benefits as part of the marital property in a case involving a pension plan under the Pension Code.

Under Illinois law, pension benefits are property interests rather than mere expectancies, regardless of whether they are matured, vested, nonvested, contributory or noncontributory. Pension rights are construed as deferred compensation in the nature of contract rights, subject to the terms of the particular pension plan. Thus, the spouse of a participant in a pension plan under the Pension Code, upon dissolution of the marriage, obtains an actual co-ownership interest in the benefits as marital property. The anti-assignment or alienation provision of a pension plan under the Pension Code does not bar the nonemployee

---

[2]The same requirements that appear in ERISA for a QDRO are found in the Internal Revenue Code of 1986. 26 U.S.C. §414 (1986).

spouse's claim to a certain portion of the pension benefits. The nonemployee spouse, however, cannot recover the claim directly from the fund, the plan administrator or the board. In such cases, therefore, the trial court will determine the present value of the pension interest allocable as marital property and may award it to the employee spouse, giving the nonemployee spouse an offsetting award from other marital property. If present value is too difficult to determine, or if there is a lack of other marital property to award the nonemployee spouse, the trial court has the discretion to allocate to each spouse an appropriate percentage of the pension to be paid if and when the pension becomes payable. When the pension becomes payable, however, it can only be paid directly to the employee spouse, who in turn must then pay to the nonemployee spouse whatever share that spouse is to receive pursuant to the judgment entered by the trial court. (*In re Marriage of Hackett* (1986), 113 Ill. 2d 286, 292-94, 497 N.E.2d 1152, 1154-55; *In re Marriage of Papeck*, 95 Ill. App. 3d 624, 629-30, 420 N.E.2d 528, 531-32.) In dividing the pension proceeds in this fashion, the trial court must consider as a relevant factor the tax consequences. Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(11).

The circumstances which I have just described lead me to the second reason for writing this specially concurring opinion, which is to suggest to the legislature that it review the Pension Code to consider providing for the assignment or alienation of plan benefits pursuant to defined Illinois QDROs in the Pension Code. This would mean that if a trial judge entered a defined Illinois QDRO as provided for by the legislature, a nonemployee divorced spouse who is involved in a public pension plan under the Pension Code would receive the marital property benefits provided for in the trial court's order or judgment directly from the fund or plan. Also, if the legislature took such action it would provide certainty and consistency in the trial court and for the parties where a pension plan under the Pension Code is involved, and it would facilitate distribution of plan benefits to the divorced spouse. If the Pension Code is amended as suggested, it would affect the following separate pension plans:

> General Assembly Retirement System;
> Police Pension Fund—Municipalities 500,000 and Under;
> Firefighters' Pension Fund—Municipalities 500,000 and Under;
> Policemen's Annuity and Benefit Fund—Cities over 500,000;
> Firemen's Annuity and Benefit Fund—Cities Over 500,000;
> Illinois Municipal Retirement Fund;
> Municipal Employees', Officers' and Officials' Annuity and Benefit Fund—Cities Over 500,000 Inhabitants;

County Employees' and Officers' Annuity and Benefit Fund—Counties Over 500,000 Inhabitants;

Forest Preserve District Employees' Annuity and Benefit Fund;

Laborers' and Retirement Board Employees' Annuity and Benefit Fund—Cities Over 500,000 Inhabitants;

Park Employees' and Retirement Board Employees' Annuity and Benefit Fund—Cities Over 500,000;

Sanitary District Employees' and Trustees' Annuity and Benefit Fund;

State Employees' Retirement System of Illinois;

State Universities Retirement System;

Teachers' Retirement System of the State of Illinois;

Public School Teachers' Pension and Retirement Fund—Cities Over 500,000 Inhabitants;

Judges Retirement System of Illinois;

House of Correction Employees' Pension Fund;

Public Library Employees' Pension Fund. See Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*

In suggesting to the legislature that it review the Pension Code to consider providing for the assignment or alienation of plan benefits pursuant to defined Illinois QDROs in the Pension Code, I wish to point out that ERISA made a radical but enlightened departure from prior law by permitting benefits to be paid to the divorced spouse before a participant has separated from service. Pursuant to a QDRO, before a participant has separated from service, benefits may be paid to the divorced spouse on or after the date that the participant spouse attains or would have attained the earliest retirement age. "Earliest retirement age," a term of art, is defined under ERISA. 29 U.S.C. §§1056(E)(i), (ii) (1988); I.R.C. §§414(p)(4)(A), (4)(B).

In making my suggestions to the legislature, I fully realize that there are numerous distinctions between private pension plans covered under ERISA and pension plans covered under the Pension Code for public employees which are primarily supported by public funds. (See *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 419, 367 N.E.2d 1325, 1327.) It is my belief, however, that any claimed differences between public employees in Illinois and those in the private sector are nonexistent when it comes to the problems involving domestic relations and the benefits which are derived by allowing the assignment or alienation of plan benefits in a pension plan pursuant to legislatively defined QDROs. Surely, divorced spouses and children of public employees in Illinois have the same needs and should have the same procedural

entitlement as divorced spouses and children of private sector employees when it comes to being able to receive benefits that are due as marital property under pension plans.

Also, I fully realize that there may or may not be Federal tax consequences involved should the legislature amend the Pension Code as suggested. It is conceivable, however, that if the Pension Code is amended to allow the assignment or alienation of plan benefits pursuant to defined Illinois QDROs, and the amendments comply with the assignment or alienation of plan benefits pursuant to the defined QDROs under ERISA, the Federal government may treat or amend the Internal Revenue Code to treat the benefits received under defined Illinois QDROs the same as benefits received pursuant to defined QDROs under ERISA. Thus, the Federal tax consequences, if any, of making the suggested amendment to the Pension Code remain to be seen.

Lastly, I wish to remind the legislature that one of this country's fastest growing means of saving in recent years has been the accumulation of pension or retirement benefits for employees in the private as well as the public sector. As accrued benefits have become a significant share of a family's savings, couples facing divorce and the judges handling domestic relations cases have found the legal question of the divisibility of benefits in a property settlement an important economic issue. In 1984, the U.S. Congress therefore addressed the issue of the divisibility of pension benefits in the private sector as they relate to domestic relations cases. (See ERISA, 29 U.S.C. §§1001, 1056 (1988).) It is now time for the Illinois legislature to address the same issue for all of the employees of Illinois who have pension plans that are provided for under the Pension Code. These working citizens of Illinois in the public sector and their families deserve to be treated no less than the working citizens of Illinois in the private sector and their families when it comes to the divisibility of pension funds in the domestic relations courtrooms.