In re the MARRIAGE OF Donald R. WISDOM, Appellee,

and

Vicki L. Walter, f/k/a Vicki L. Wisdom, Appellant.

No. 90CA1532.

Colorado Court of Appeals, Div. A.

June 18, 1992.

Brega & Winters, P.C., Robert R. Dormer, Scott L. Terrell, Denver, for appellee.

Callahan & Callahan, Thomas J. Callahan, Wray, for appellant.

Opinion by Justice HODGES.*

Vicki L. Walter (wife) appeals an order of the trial court determining her liability for

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

child support arrearages. We reverse and remand for further proceedings.

A decree of dissolution was entered in 1983. As pertinent here, the parties at that time agreed that the wife would waive maintenance and Donald R. Wisdom (husband) would pay for the mortgage balance on the family home and the Corman debt. They also agreed to joint custody and "joint support" of their three daughters and that if "any of the children elect to seek higher education, each party will pay one-half of the expense thereof."

Thereafter, numerous disputes arose between the parties regarding support and property issues. Of significance here, the wife obtained a judgment in 1985 against husband for $55,928.67 representing the mortgage payments which husband had failed to make. Then, in 1987, husband filed for Chapter 7 bankruptcy, and listed wife and Leota Corman as unsecured creditors. Later, wife was forced to satisfy the Corman debt.

In September 1989, husband filed a motion for judgment for child support seeking wife's share of past child support and educational expenses. Wife opposed this motion, arguing *inter alia*, that there was no decretal order for support beyond the age of 21, that the asserted expenses did not constitute support or higher educational costs, and that any sums determined to be owed by her for child support should be offset by her judgment against the husband and the Corman debt which had been discharged in bankruptcy.

In a series of orders, the trial court determined that the parties intended to assist their daughters in obtaining undergraduate college educations without regard to whether they reached the age of 21 during such education. Accordingly, the court entered judgment for husband in the amount of $27,895.54, plus interest, and judgment for wife in the amount of $3,054.11, plus interest, representing the amounts that it determined were owed to each spouse for his or her respective share of the support and educational expenses provided by the other.

Further, the trial court agreed there was merit to wife's argument that no injury to the children would result from her being granted an offset of the debts that husband had discharged in bankruptcy. However, it also concluded that wife's objection related to the alleged unfairness of the bankruptcy discharge order.

In this regard, it stated:

The Court has to view this situation the same as any in which one of the parties had to suffer by reason of a bankruptcy discharge of another party. For example, the Court often orders each of the parties to pay certain joint obligations and to hold the other party harmless therefrom. When bankruptcy discharges the obligation of the party ordered to pay a joint obligation, this Court would not entertain a petition to enter a judgment against that same party by the remaining party who had to pay more than his or her proportionate share of the debt. This obviously isn't fair, but the bankruptcy laws supersede and the Supremacy Clause dictates that it is the end of the matter.

Thus, the trial court denied the wife's request for an offset.

I.

■ Wife first asserts that the trial court erred in determining that the parties were legally obligated to share the cost of higher education after each daughter reached the age of 21. She argues that the property settlement agreement lacks express provisions regarding this issue and that, therefore, no such obligation existed. We do not agree.

■ The parties "otherwise agreed in writing" to contribute equally to the higher education of their children. *See* § 14–10–122(3), C.R.S. (1987 Repl.Vol. 6A). Therefore, although the agreement failed to provide specifically for the termination of either child support or higher educational costs, the trial court was required to interpret and enforce the implied obligation so as to render it lawful, operative, and effective. *See In re Marriage of Meisner,* 807 P.2d 1205 (Colo.App.1990). In doing so, it

was required to consider all of the provisions of the agreement as well as the circumstances at the time it was made, consonant with its dominant purpose. *In re Marriage of Norton*, 757 P.2d 1127 (Colo. App.1988). *See also In re Marriage of Thomason*, 802 P.2d 1189 (Colo.App.1990).

Here, the father testified that each of the children were age 18 when they started college, and the record shows that in the normal course of events, each received, or would receive, a bachelor's degree after turning age 21. The mother testified that, while the parties did not specifically discuss the issue of child support terminating at age 21, she "probably would not have an objection if the court allowed four years." Finally, the daughter who was already enrolled in her freshman year of college at the time of the parties' dissolution hearing testified that a college education had been contemplated by her parents. In addition, she testified that she had not expected her parents' contributions to end upon her reaching the age of 21 and that, in any event, she could not have completed a normal four-year college program before turning 21.

■ The determination of the intent of the parties is a question of fact. *Burman v. Richmond Homes, Ltd.*, 821 P.2d 913 (Colo.App.1991). Therefore, if as here, the trial court's determination is supported by evidence in the record and reasonable inferences from such evidence, it will not be disturbed on review. *See In re Marriage of Sharp*, 823 P.2d 1387 (Colo.App.1991).

## II.

Wife also contends that the trial court erred in denying her request for legal or equitable relief from the child support arrearages. We conclude that the matter must be remanded for appropriate resolution of this issue.

### A.

■ Initially, we reject wife's argument that the court should have applied the defense of laches to prevent the husband from reducing to judgment the undetermined past-due amounts of support. *See In re Marriage of Meisner, supra* (the doctrine of laches has no application to actions for the recovery of past-due child support).

### B.

In addition, wife argues that she should be granted an offset in order to prevent husband from being unjustly enriched. We conclude that further proceedings are needed for disposition of this issue.

■ In the domestic relations field, special considerations of an equitable nature may arise. *See e.g., In re Marriage of Pusey*, 811 P.2d 457 (Colo.App.1991). Thus, a setoff against arrearages may be appropriate if, as here, it is established that no harm will result to the interests of the children. *Compare Colorado State Bank v. Utt*, 622 P.2d 584 (Colo.App.1980) *with Hall v. Hall–Stradley*, 776 P.2d 1166 (Colo. App.1989).

However, the trial court did not fully determine whether wife was in fact entitled to equitable relief because it believed that the bankruptcy court has exclusive jurisdiction over the dischargeability of debts and concluded that the judgment and Corman debt had been absolutely discharged in bankruptcy. Hence, the issue which remains and is dispositive is the correctness of the trial court's determination that such discharge had in fact been granted and that, therefore, it was bound by such determination.

Upon the granting of a discharge in bankruptcy, a permanent injunction as provided in 11 U.S.C. § 524 (1988):

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor....

However, 11 U.S.C. § 727(b) (1988) provides for exceptions to discharge as follows:

Except as provided in Section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter. . . .

Thus, the provisions of 11 U.S.C. § 524 would not enjoin actions of creditors who successfully invoke 11 U.S.C. § 523 (1988). *In re Aldrich,* 34 Bankr. 776 (9th Cir.BAP 1983).

The dischargeability of the disputed obligations here is governed by 11 U.S.C. § 523 (1988), which provides in pertinent part:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

Furthermore, the exceptions to discharge are divided into two major groups: those debts as to which the bankruptcy courts have exclusive jurisdiction to determine exceptions from discharge and those debts as to which the bankruptcy court does not have such exclusive jurisdiction. *In re Aldrich, supra.*

■ As relevant here, the bankruptcy court has concurrent rather than exclusive jurisdiction to determine whether a debt is in the nature of support and is therefore excepted from discharge under 11 U.S.C. § 523(a)(5) (1988). *In re Marriage of Bar-*

*ber,* 811 P.2d 451 (Colo.App.1991). *See In re Portaro,* 108 B.R. 142 (Bankr.N.D. Ohio 1989); 3 *Collier on Bankruptcy* § 523.-15[6] at 523–126 (L. King 15th ed. 1991). Thus, contests to dischargeability of a debt claimed to be in the nature of alimony, maintenance, or support can be brought in either an appropriate state court or in the bankruptcy court. *In re Marriage of Sailsbury,* 13 Kan.App.2d 740, 779 P.2d 878 (1989).

■ In addition, such contests can be brought before or after a discharge has been granted to the debtor, *In re Aldrich, supra,* because there is no time limit for the filing of a complaint to determine the dischargeability of a type of debt listed as non-dischargeable under § 523(a)(5). *See* Advisory Committee Note accompanying Bankruptcy Rule 4007, which provides:

Subdivision (b) does not contain a time limit for filing a complaint to determine the dischargeability of a type of debt listed as nondischargeable under § 523(a)(1), (3), (5), (7), (8), or (9). Jurisdiction over this issue on these debts is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum.

11 U.S.C. Appendix–Bankruptcy Rule 4007 at 260 (1988 ed.).

■ Therefore, we hold that the trial court has the authority to determine whether wife's judgment and the Corman debt were dischargeable under 11 U.S.C. § 523(a)(5). Hence, the court erred in declining to consider the appropriateness of an offset on the belief that it was without jurisdiction to do so.

C.

■ Also, the district court has jurisdiction to determine whether a domestic obligation constitutes alimony, maintenance, or support under § 523(a)(5). *See also In re Calhoun,* 715 F.2d 1103 (6th Cir.1983).

■ Furthermore, since the issues in an equitable assignment of obligations are ordinarily intimately related, establishing whether an obligation is in the nature of

alimony, maintenance, support, or part of property distribution can be difficult. *See In re Marriage of Sinn,* 696 P.2d 333 (Colo.1985); *Carlson v. Carlson,* 178 Colo. 283, 497 P.2d 1006 (1972).

Thus, the determination requires the court to examine the entire document which provides for the alimony, maintenance, or support, *In re Kaplan,* 18 B.R. 1018 (Bankr.E.D.N.Y.1982), while bearing in mind that the parties' designation of the debt is not dispositive. *See In re Mineer,* 11 B.R. 663 (Bankr.Colo.1981).

The court must look beyond the language of the decree to determine the intent of the parties and the substance of the obligation, *In re Goin,* 808 F.2d 1391 (10th Cir.1987), and consequently, it may consider extrinsic evidence. *See In re Orr,* 99 B.R. 109 (Bankr.S.D.Fla.1989). *See generally* Comment, *Bankruptcy & Divorce in Kansas,* 29 Washburn L.J. 551 (1990).

As pertinent here, an obligation to pay the mortgage on the former marital residence has been held to be in the nature of support, or in lieu of support or maintenance. *In re Yeates,* 807 F.2d 874 (10th Cir.1986); *In re Marriage of Hauger,* 679 P.2d 604 (Colo.App.1984) (obligation to pay house insurance costs, water assessment fees, and extraordinary house expenses are in the nature of maintenance). This may be so even if, as here, the non-debtor has waived maintenance. *See In re Orr, supra.*

Accordingly, the judgment is reversed, and the cause is remanded to the trial court to determine whether the wife's judgment and the Corman debt are in the nature of alimony, maintenance, or support and, thus, are non-dischargeable. In the event the debts are found to be dischargeable, the trial court's order is affirmed. However, the trial court has already determined that no harm would result to the children if an offset were not precluded by the supremacy clause. Therefore, if the debts are found to be in the nature of alimony, support, or maintenance, they are non-dischargeable, and the trial court is instructed to determine the appropriate amount of offset and to enter a new judgment in accordance with these determinations.

STERNBERG, C.J., and PIERCE, J., concur.