2022 IL App (1st) 211018-U

No. 1-21-1018

Second Division
December 13, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| *In re* MARRIAGE OF | ) | Circuit Court of |
| | ) | Cook County. |
| JODI SHULGA, | ) | |
| | ) | |
| Petitioner-Appellee | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RONALD SHULGA, | ) | No. 14 D 10594 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARY KLEBBA, | ) | Honorable |
| | ) | Naomi H. Schuster, |
| Third Party Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's orders denying third party respondent's section 2-1401 petition to vacate and dismissing her other section 2-1401 petition to vacate are affirmed

where the circuit court had subject matter jurisdiction and she could not demonstrate that the judgments were void for any reason. The circuit court's contempt and body attachment orders are also affirmed.

¶ 2 This case stems from a postdissolution of marriage proceeding, in which petitioner-appellee Jodi Shulga (Jodi) brought a claim for unjust enrichment against third party respondent-appellant Mary Klebba (Mary) and sought a constructive trust over the surviving spouse pension benefits Mary received as the wife of respondent Ronald Shulga (Ronald) at the time of his death. The circuit court determined that Mary was unjustly enriched, and Jodi was entitled to receive 50% of the benefits and imposed a constructive trust. This court affirmed the circuit court's decision on appeal. *In the Marriage of Shulga*, 2019 IL App (1st) 182028 (*Shulga I*).

¶ 3 Following protracted litigation, Mary filed two petitions to vacate pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)). The circuit court granted Jodi's motion to dismiss one petition and otherwise denied the other petition. The circuit court also entered an order holding Mary in indirect civil contempt for failing to comply with the court's orders and later entered a body attachment for Mary for failing to purge her contempt.

¶ 4 Mary now appeals from those orders, arguing that (1) the circuit court lacked subject matter jurisdiction; (2) the surviving spouse benefits were exempt from collection; (3) the circuit court violated her procedural due process rights; (4) the circuit court violated an executive order issued in response to the COVID-19 pandemic; and (5) the contempt and body attachment orders should be vacated because the judgments upon which they were based are void and the circuit court failed to follow the proper procedure in issuing the body attachment order. For the reasons that follow, we affirm.

¶ 5                                             I. BACKGROUND

¶ 6     At the outset, we note, that no report of proceedings nor an acceptable substitute was filed in this appeal. See Ill. S. Ct. R. 321 (eff. Feb. 1, 1994); Ill. S. Ct. R. 323 (eff. July 1, 2017). We note, as we much too frequently must, the burden is on the appellant to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389-391-92 (1984). Any doubt arising from the incompleteness will be resolved against the appellant. *Id.* at 392.

¶ 7     On November 20, 2014, Jodi filed for divorce from Ronald. According to the petition, Jodi and Ronald married on May 19, 1991. At the time of their marriage, Ronald was employed as a firefighter for the city of Evanston.

¶ 8     An order dissolving the marriage was entered on April 12, 2016 and incorporated a marital settlement agreement (MSA). Article V of the MSA, entitled "Marital Property," provided that Ronald was a participant in the City of Evanston Pension Plan and that Jodi was awarded 50% of the marital portion of these benefits pursuant to a Qualified Illinois Domestic Relations Order (QILDRO).

¶ 9     On July 26, 2016, Ronald applied for line-of-duty disability pension with the Evanston Firefighters Pension Fund pursuant to section 4-110 of the Illinois Pension Code (Pension Code).

¶ 10    On August 30, 2016, Ronald married Mary.

¶ 11    On October 20, 2016, a QILDRO was entered to implement a division of the parties' interest in the Evanston Firefighters Pension Fund (Fund). Section III required the Fund to pay 50% per month of Ronald's retirement benefits to Jodi, and the monthly payments would terminate upon the death of Ronald or Jodi, whichever first occurs. Section VII directed the Fund to pay Jodi 50% "of any death benefits that become payable to [Ronald's] death benefit beneficiaries or estate." Finally, as relevant to the issues in this appeal, section XII stated the following:

        "The Court retains jurisdiction over this matter for all of the following purposes:

(1) To establish or maintain this Order as a [QILDRO].

(2) To enter amended QILDROs and QILDRO Calculation Court Orders to conform to the parties' Marital Settlement agreement or Agreement for Legal Separation ("Agreement"), to the parties' Judgment for Dissolution of Marriage or Judgment for Legal Separation ("Judgment"), to any modifications of the parties' Agreement or Judgment, or to any supplemental orders entered to clarify the parties' Agreement or Judgment.

(3) To enter supplemental orders to clarify the intent of the parties or the Court regarding the benefits allocated herein in accordance with the parties' Agreement or Judgment, with any modifications of the parties' Agreement or Judgment, or with any supplemental orders entered to clarify the parties' Agreement or Judgment. A supplemental order may not require the Retirement System to take any action not permitted under Illinois law or the Retirement System's administrative rules. To the extent that the supplemental order does not conform to Illinois law or administrative rule, it shall not be binding upon the Retirement System."

¶ 12    On May 11, 2017, Ronald died. On that same day, the Board of Trustees of the Fund approved Ronald's application for the disability pension and fixed the effective date of the award on August 1, 2017. On May 15, 2017, Mary applied to the Fund for surviving spouse benefits as Ronald's widow. On June 5, 2017, her application was approved and pursuant to section 4-114 of the Code (735 ILCS 5/4-114 (West 2016)), Mary began receiving 100% of these benefits from the Fund, which amounted to $9,169.53 per month, as the surviving spouse of a disabled.

¶ 13    On December 14, 2017, Jodi filed a petition to join Mary in the dissolution action as a necessary party, which the circuit court granted. Subsequently, Jodi filed a complaint, which she later amended, against Mary, claiming unjust enrichment and seeking the imposition of a constructive trust for any benefits paid by the Fund, including "those relating to Ronald['s] disability pension."

¶ 14    On August 27, 2018, the circuit court held a hearing on Jodi's complaint, at which time the court considered the parties' memoranda, and exhibits. On September 6, 2018, the court issued a written order. In its order, the court found that Mary was unjustly enriched and ordered enforcement of the MSA. The order directed the parties to open a trust account for Jodi requiring Mary to pay 50% of the gross monthly amount that she was receiving from the Fund. Additional orders were entered on October 1, 2018 and November 26, 2018, clarifying the specific monthly amount, payment procedure, and the amount of backpay owed from payments previously paid to Mary, which at that time totaled $71,729.39.[1]

¶ 15    Mary appealed the circuit court's orders awarding Jodi 50% of the monthly surviving spouse benefits. She argued that the court erred because the dissolution judgment and the MSA do not provide for disability benefits and to do so would violate the Pension Code and the court did not have the power, equitable or otherwise, to provide any relief not specified in the MSA.

¶ 16    We affirmed the decision of the circuit court. *Shulga I*, 2019 IL App (1st) 182028. In particular, we held that the benefits paid to Mary were in substance retirement benefits, not

---

[1] As this court noted in *Shulga I*, 2019 IL App (1st) 182028, ¶ 20, the circuit court granted relief solely on the pleadings, memoranda, and exhibit. "There was no trial, no motion for summary judgment, and no written motion for judgment on the pleadings." *Id.* However, "none of the parties objected to the manner in which the court resolved the complaint[.]" *Id.* ¶ 21. As such, we construed the circuit court's judgments as if the court had entered them on a motion for judgment on the pleadings. *Id.*

disability benefits, and thus, in accordance with the terms of the MSA, Jodi was entitled to 50% of the payments. *Id.* ¶ 27. Further, we held that the circuit court's decision to impose a constructive trust was an appropriate remedy to enforce the MSA. *Id.* ¶ 30.

¶ 17    Regarding Mary's argument that the circuit court lacked the power to provide relief, equitable or otherwise, this court found that she had forfeited these arguments as they were never presented to the circuit court. Notwithstanding such forfeiture, this court reiterated that the circuit court had "the inherent power to enforce its orders," and that it retains its equitable powers " '[i]rrespective of empowering statutes.' " *Id.* ¶ 30 (quoting *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297-98 (2000)).

¶ 18    Mary filed a petition for leave to appeal to our supreme court, which was denied on January 29, 2020. *In re Marriage of Shulga*, No. 125452 (Jan. 29, 2020). Her subsequent petition for writ of certiorari to the United States Supreme Court was likewise denied.

¶ 19    After the mandate issued in *Shulga I*, Jodi filed a motion for turnover of the judgment amount of $71,729,39. On July 20, 2020, the circuit court entered an order finding that there existed no basis to delay the enforcement of the judgment and that the new amount owed to Jodi, which included statutory interest, totaled $82,129.17. The order gave Mary 30 days to make alternative payment arrangements; however, if no alternative agreement was reached, Mary would transfer an additional $4,584.76 per month to pay down the judgment amount.[2]

---

[2] We note that, in her brief, Jodi has also referenced an August 6, 2020 e-mail from Mary which was sent to First District Appellate Court Justice Mathias W. Delort regarding her appeal. In a letter, the Clerk of the Appellate Court informed Mary that the e-mail was an improper *ex parte* communication and directed her to cease all communications with the court in that manner. The letter included a copy of the e-mail. These documents are not in the record on appeal but were included in the appendix of Jodi's brief. Nonetheless, we cannot consider documents not in the record and, in any case, this document is irrelevant to the merits of this appeal. See *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009) (stating that the reviewing court cannot consider materials that were not included in the record on appeal).

¶ 20    At this point, Mary's counsel withdrew. A payment plan was not submitted to the court. On August 31, 2020, Jodi subpoenaed Mary's financial records and the court ordered Mary to submit a financial affidavit, although none appears in the record. Subsequently, Mary, proceeding *pro se*, filed an emergency motion to stay any payments to Jodi until the United States Supreme Court ruled on her petition. She also requested that the September 2020 payment be reimbursed to her and that the financial discovery be stayed as well. An order was entered continuing in effect the turnover order and ordering the first payments towards the judgment amount payable on October 1, 2020.

¶ 21    On October 7, 2020, Jodi filed a petition for rule to show cause and for adjudication of indirect civil contempt. In her petition, Jodi alleged that Mary had filed complaints with the Attorney Registration & Disciplinary Commission against Jodi's counsel and that Mary had failed to pay any of the required amounts to Jodi for her share of the benefits or any payments towards the judgment amount. In response, Mary asserted that she had been unable to make the required payments due to overdue mortgage payments and she requested relief from the judgment owed until January 1, 2021.

¶ 22    On November 6, 2020, the court issued a rule to show cause against Mary.

¶ 23    On November 19, 2020, Mary filed a "Motion for Clarification and Reconsideration Based on Evidence and Laws[,]" in which she argues that the court should not have awarded Jodi 50% of the benefits because the MSA and QILDRO did not give Jodi that right and Jodi did not deserve the benefits as demonstrated by the attached exhibits. Those exhibits included letters, e-mails, and text messages from Jodi and other family members. Based on this evidence, Mary requested that the prior judicial rulings be vacated. On November 25, 2020, the circuit court denied Mary's motion.

¶ 24    On December 9, 2020, the court found Mary to be in indirect civil contempt for willful failure to obey the court's order and ordered her committed to the Cook County Jail if she did not pay 50% of the amount due ($13,254.28) by February 9, 2021.

¶ 25    Subsequently, on December 11, 2020, Mary filed an emergency motion to reconsider, wherein she alleged that she had a migraine on the day of the hearing and that Jodi's counsel was recording her during the hearing. The circuit court found that an emergency had not been established and denied the motion.

¶ 26    Having retained new counsel, on February 5, 2021, Mary filed the first of two section 2-1401 petitions. In the February petition she sought to vacate the July 20, 2020 turnover judgment as void. Therein, she argued that the enforcement proceeding was not brought under the correct statute or supreme court rule and that it did not comply with the requirements for supplementary citation proceedings. She further asserted that her right to procedural due process was violated because she was never provided notice of her statutory right to declare certain income and assets exempt from being used to satisfy the judgment and that the money received from the Fund was exempt from being used to satisfy a money judgment pursuant to the Pension Code (40 ILCS 5/4-135 (West 2020)) and the Illinois Judgment Act (735 ILCS 5/12-1006(a) (West 2020)). Lastly, she claimed that the turnover judgment and discovery of assets violated Executive Order 2020-25 issued in response to the COVID-19 pandemic.

¶ 27    On February 9, 2021, the court entered an order stating that Mary had complied with the December 9, 2020 purge order.

¶ 28    On March 4, 2021, Jodi filed her second petition for rule to show cause. Styled as an emergency petition, Jodi argued that her vehicle was at risk of being repossessed due to Mary's failure to pay the judgment amount and monthly payments. The petition alleged that Mary still

owed $37,992.84 in total. At the time, Jodi's motion for turnover of the purge funds from the circuit court clerk was pending before the court.

¶ 29 That day, Mary filed a response in opposition to the emergency petition. Therein, she incorporated the same arguments as those included in her February petition. She also filed an objection to the motion for turnover of the purge amount.

¶ 30 On March 25, 2021, Mary filed a second 2-1401 petition to vacate the September 6, October 1, and November 27, 2018 judgments (the 2018 judgments). Therein, she requested that the orders be vacated as void pursuant to subsection (f) of section 2-1401. She argued that the MSA and the QILDRO "did not provide a basis in law" for Jodi's complaint or for the court's award of 50% of the benefits to Jodi, and therefore, the circuit court "did not have the authority or jurisdiction" to enter the judgments.

¶ 31 On March 29, 2021, the court entered an order granting Jodi's motion for turnover of the purge amount.

¶ 32 On April 16, 2021, Jodi filed a combined motion to dismiss Mary's March petition pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)), arguing that Mary's claims were barred by *res judicata* and that her petition was barred by the statutory two-year limitation on petitions to vacate. She additionally requested sanctions against Mary and her counsel in the form of attorney's fees. In response, Mary asserted, *inter alia*, that her petition was properly brought under subsection (f) of section 2-1401, and that the court lacked jurisdiction or lacked the power to enter the orders at issue. As such, Mary maintained that those orders were void. In her reply, Jodi asserted that the circuit court had subject matter jurisdiction over her claim of unjust enrichment and that the provisions of the Pension Code upon which Mary relies are not applicable where the Pension Code was not the basis of Jodi's complaint.

¶ 33    On May 27, 2021, following a hearing, the court granted Jodi's combined motion to dismiss Mary's March petition, finding that there was no issue of subject matter jurisdiction as to the 2018 judgments.

¶ 34    On June 21, 2021, Mary was held in indirect civil contempt for the second time and was ordered to pay a purge of $27,208.56 by August 18, 2021 to avoid commitment to the Cook County Jail.

¶ 35    On July 23, 2021, the court entered an order denying Mary's February petition to vacate the July 20, 2020 turnover judgment.

¶ 36    On August 4, 2021, Mary's motion to reconsider the court's dismissal of her March petition was denied.

¶ 37    Because Mary failed to pay the purge amount, a body attachment order was entered on August 19, 2021.

¶ 38    This timely appeal followed.

¶ 39                                    II. ANALYSIS

¶ 40    Mary asserts a number of arguments on appeal. She first claims that the circuit court erred in dismissing her March petition and denying her February petition because the court's orders challenged in those petitions were void for lack of subject matter jurisdiction. Next, she contends that her February petition should have been granted because the circuit court did not have the authority to enter the turnover judgment where (1) the benefits were exempt from collection to satisfy a money judgment; (2) her procedural due process rights were violated during the supplementary proceedings; and (3) the circuit court failed to comply with the Governor's executive order staying supplementary proceedings during the COVID-19 pandemic. Finally, she

argues that the contempt orders were void because they were based on void orders and because the circuit court did not follow the proper procedure when entering the body attachment order.

¶ 41                              A. Subject Matter Jurisdiction

¶ 42    Mary's arguments on appeal are grounded largely in her erroneous assertion that the circuit court lacked subject matter jurisdiction in the original action and thus her March petition should not have been dismissed as the 2018 judgments were void. Specifically, she contends that "the circuit court had no authority to ignore the clear statutory language and award [surviving] spouse benefits to an ex-spouse" and thus, "it was error for the circuit court to find that it had subject matter jurisdiction and find that [Mary] was unjustly enriched[.]" In response, Jodi asserts that Mary is merely making the same arguments that she has previously raised on multiple occasions before the circuit court and this court. Jodi further asserts that the circuit court retained jurisdiction over the action as set out in the MSA and this court affirmed the circuit court's authority to provide the equitable relief for a claim of unjust enrichment.

¶ 43    Preliminarily, we address Mary's argument that the circuit court erred in dismissing her March petition "without clarifying whether the decision was under either [section] 2-615 or 2-619."

¶ 44    Section 2-619.1 of the Code permits a party to file a motion to dismiss based on both sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-619.1 (West 2020). A combined motion must have separate and distinct parts showing the points and grounds relied upon for each section. 735 ILCS 5/2-619.1 (West 2020). A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint by alleging defects on its face. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. A dismissal is proper under this section only when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* A motion to dismiss

under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 45    When ruling on these motions, a court must accept as true all well-pled facts and any reasonable inferences arising therefrom, but a court need not accept mere conclusions of law unsupported by fact. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. The standard of review for a dismissal pursuant to either of these motions is *de novo. Id.*

¶ 46    Although the moving party must make each section of their combined motion distinct, we are aware of no authority, and Mary cites to none, requiring that the circuit court specify its basis for granting a dismissal under section 2-619.1. Regardless, under *de novo* review, "[w]e may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210740, ¶ 39.

¶ 47    Turning to the substantive issue now before us, for the reasons that follow, we find that Mary's March petition was properly dismissed under section 2-615 where it is apparent that under no set of facts would Mary be entitled to the relief requested, *i.e.,* vacating the judgments for voidness.

¶ 48    Section 2-1401 of the Code allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401(a) (West 2020). The purpose of this section is "to give litigants a chance after judgment is entered to present facts to the court that, if known at the time the judgment was entered, would have prevented the entry of judgment." *Giles v. Parks*, 2018 IL App (1st) 163152, ¶ 19. Generally, to be legally sufficient, section 2-1401 petitions "must be filed within two years of the order or judgment, the petitioner must allege a meritorious defense to the original action, and the petitioner must show that the petition was brought with due diligence." *Sarkissian v. Chicago*

*Board of Education*, 201 Ill. 2d 95, 103 (2002). The two-year limitation for section 2-1401 petitions provides stability and finality to lawsuits. *Crowell v. Bilandic*, 81 Ill. 2d 422, 427-28 (1980). However, and significant here, pursuant to subsection (f) of section 2-1401, a party may, at any time, bring a petition challenging a judgment on the basis that it was void, and the voidness allegation dispenses with the requirements for a meritorious defense and due diligence. 735 ILCS 5/2-1401(f) (West 2020); *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 11.

¶ 49    Only the most fundamental defects warrant declaring a judgment void, as opposed to voidable. *LVNV Funding*, 2015 IL 116129, ¶ 38. "[W]hether a judgment is void or voidable depends on whether the court entering the challenged order possessed jurisdiction over the parties and the subject matter." *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). If jurisdiction is lacking, any subsequent judgment or order is rendered void and may be attacked directly or collaterally at any time. *LVNV Funding*, 2015 IL 116129, ¶ 38. A voidable judgment, however, is "an erroneous judgment entered by a court that possesses jurisdiction and is not subject to collateral attack." *Nunez v. C&C Investments of Chicago, LLC*, 2022 IL App (1st) 211423, ¶ 21 (citing *Mitchell*, 181 Ill. 2d at 174). After a court acquires personal and subject matter jurisdiction, an order will not be rendered void because of an error or impropriety in the court's decision. *Herrera v. Herrera*, 2021 IL App (1st) 200850, ¶ 37.

¶ 50    A court's judgment on a section 2-1401 petition alleging that an underlying judgment is void, like its judgment on a section 2-619.1 motion, is subject to *de novo* review. *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 716 (2010).

¶ 51    In *Shulga I*, we expressly affirmed, not only the circuit court's September 16, 2018 order, but also the court's October 1, 2018 and the November 27, 2018 orders. *Shulga I*, 2019 IL App (1st) 182028, ¶ 31. Indeed, Jodi argued below that Mary's reframed claims were barred by *res*

*judicata*. Apparently seeking to avoid any actual or perceived procedural bar to further review of her claims in either the circuit court or here on appeal, Mary attempts to cloak her claims in the voidness doctrine. Here, Mary's March petition was brought pursuant to subsection (f) where she challenged the circuit court's subject matter jurisdiction to enter the 2018 judgments. As such, it was permissible for Mary to bring her petition outside of the two-year limitation period, and she was not required to set forth a meritorious defense or show due diligence. See *LVNV Funding*, 2015 IL 116129, ¶ 38 ("Under Illinois law, a party may challenge a judgment as being void at any time, either directly or collaterally, and the challenge is not subject to forfeiture or other procedural restraints."). Our review, then, commences with a determination of whether the circuit court's 2018 judgments were void for lack of subject matter jurisdiction.

¶ 52    Subject matter jurisdiction concerns the court's power "to hear and determine cases of the general class to which the proceeding in question belongs." *In re M.W.*, 232 Ill. 2d 408, 415 (2009). Besides an administrative action, for which the circuit court's power is conferred by statute, "a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *McCormick*, 2015 IL 118230, ¶ 19. Under section 9 of article VI of the Illinois Constitution, the jurisdiction of circuit courts extends to all "justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office." Ill. Const. 1970, art. VI, § 9; see *In re Marriage of Isaacs*, 260 Ill. App. 3d 423, 427 (1994) ("[A] trial judge sitting in the domestic relations division of the circuit court of Cook County has jurisdiction to hear all justiciable issues.").

¶ 53    A "justiciable matter" is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,

199 Ill. 2d 325, 335 (2002). "[E]ven a defectively stated claim is sufficient to invoke the court's subject matter jurisdiction, as '[s]ubject matter jurisdiction does not depend upon the legal sufficiency of the pleadings.' " *In re Luis R.*, 239 Ill. 2d 295, 301 (2010) (quoting *Belleville Toyota*, 199 Ill. 2d at 340). Thus, "the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.) *Luis R.*, 239 Ill. 2d at 301. Against this backdrop, we proceed with our examination of the nature of the claims now before us and the relief sought in order to make such a determination. See *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632 (2004) (stating that the determination of subject matter jurisdiction is focused on the nature of the case and the relief sought).

¶ 54    In January 2018, Jodi filed a complaint alleging that Mary was unjustly enriched because she was receiving benefits as the surviving spouse of a disabled firefighter, 50% of which Jodi claimed to be entitled, and Jodi sought the imposition of a constructive trust. The complaint contained definite and concrete allegations and specifically requested relief in the form of a constructive trust for 50% of the benefits. The controversy was neither hypothetical nor moot as Mary was receiving payments from the Fund at the time the complaint was filed, and Jodi and Mary are clearly adverse parties both with an interest in the same property. The question of whether Mary had been unjustly enriched by the receipt of these benefits presented a justiciable matter. See *In re Marriage of Armstrong*, 2016 IL App (2d) 150815, ¶ 22 (finding that the ex-husband's request to modify child support and maintenance presented a justiciable matter). Because Jodi raised a claim falling within the general class of cases the circuit court has the inherent power to hear and decide, the circuit court had subject matter jurisdiction to address Jodi's complaint and to enter the 2018 judgments. See *Luis R.*, 239 Ill. 2d at 305 (subject matter jurisdiction is invoked

by the filing of a claim alleging the existence of a justiciable matter). Therefore, the circuit court's dismissal of Mary's section 2-1401 petition to vacate the 2018 judgments was proper.

¶ 55    Nonetheless, Mary contends that the circuit court did not have subject matter jurisdiction or "authority" over her surviving spouse benefits because the Pension Code provides that a firefighter's surviving spouse pension must go to the surviving spouse. See 40 ILCS 5/4-114(j) (West 2020). This argument is without merit for the following reasons.

¶ 56    First, the Pension Code is irrelevant to the court's authority over Jodi's complaint where Jodi was seeking an equitable remedy based on unjust enrichment, a claim that is not within the purview of the Pension Code. See *Smithberg v. Illinois Mun. Retirement Fund*, 192 Ill. 2d at 298 (stating that the circuit court retains its traditional equitable powers, which "cannot be taken away or abridged by the legislature"). In fact, Jodi did not make any claims specific to the Pension Code in her complaint.

¶ 57    To this point, we find *In re Marriage of Papeck*, 95 Ill. App. 3d 624 (1981), analogous. There, the Fund challenged the circuit court's jurisdiction to order the pension board to refund money to a fireman's ex-wife. *Id.* at 626. The Fund argued that, pursuant to the relevant statutory scheme, the pension board was vested with exclusive original jurisdiction over all matters relating to the Fund, and the circuit court "preempted the [b]oard's express jurisdictional power[.]" *Id.* This court stated that the circuit court has jurisdiction over dissolution actions and the court "had the power to equitably divide the parties' property" as it was a justiciable issue. *Id.* at 627. Similarly, here, we find that the court's jurisdiction in this action was not determined by the Pension Code.

¶ 58    Second, this court has already addressed Mary's arguments regarding the circuit court's power and authority in this action. *Shulga I*, 2019 IL App (1st) 182028, ¶ 30. Specifically, we held that "the circuit court retains jurisdiction to enforce domestic relations orders" and the "court's

decision to impose a constructive trust was an entirely appropriate remedy to enforce the MSA." *Id.* Moreover, the MSA expressly states that "the Court retains jurisdiction for the purpose of amending this judgment to the extent necessary to satisfy such conditions and implement such provisions even after the death of one or both parties." The QILDRO similarly provided for the circuit court to retain jurisdiction "[t]o enter supplemental orders to clarify the intent of the parties or the Court regarding the benefits allocated herein in accordance with the parties' Agreement or Judgment, with any modifications of the parties' Agreement or Judgment, or with any supplemental orders entered to clarify the parties' Agreement or Judgment."

¶ 59    Mary puts forth the same subject matter jurisdiction/voidness argument in support of her challenge to the court's denial of her February section 2-1401 petition which sought vacatur of the court's July 2020 turnover judgment. Her subject matter jurisdiction argument regarding denial of the February petition fails for the same reasons as the arguments asserted in support of the March petition.

¶ 60    Notwithstanding Mary's repeated attempts to cast her claims as involving "subject matter jurisdiction," distilled to their simplest form, Mary's argument here, just as it was in *Shulga I,* is that that the circuit court's judgments violated the Pension Code. Even assuming the court's ruling was in some way violative of the Pension Code, such would have no bearing on the court's subject matter jurisdiction. The failure to satisfy a certain statutory requirement or prerequisite cannot deprive the circuit court of its "power" or jurisdiction to hear a cause of action. *LVNV Funding*, 2015 IL 116129, ¶ 30. Further, a court's error cannot nullify its jurisdiction over the matter. *Zaferopulos v. City of Chicago*, 206 Ill. App. 3d 904, 909 (1990) ("Jurisdiction does not depend on the correctness of the decision made and is not lost because of an erroneous decision."); *Herrera*, 2021 IL App (1st) 200850, ¶ 37 ("Once a court has acquired jurisdiction, an order will

not be rendered void merely because of an error or impropriety in the issuing court's determination of the law."). Any error by the circuit court regarding the Pension Code would not render the 2018 judgments void, only voidable. See *In re Custody of Ayala*, 344 Ill. App. 3d 574, 584 (2003) (stating that a voidable judgment is one that is entered erroneously either through mistake of fact or mistake of law or both by a court having jurisdiction).

¶ 61    Having determined that subject matter jurisdiction was proper, we decline to further engage in a discussion regarding Mary's additional voidness claims on that basis. In sum, her petitions to vacate pursuant to subsection (f) of section 2-1401 of the Code were properly dismissed where she could not demonstrate under any set of facts that the judgments were void.

¶ 62                    B. Surviving Spouse Pension Benefits Exemption

¶ 63    Mary next argues that her February petition to vacate the turnover judgment was improperly denied because "the circuit court lacked authority to allocate the 4-114(j) surviving spouse pension benefits to satisfy a judgment ***." Citing to section 4-135 of the Pension Code (40 ILCS 5/4-135 (West 2020)) and section 1006(a) of the Illinois Judgment Act (735 ILCS 5/12-1006(a) (West 2020)), she asserts that her surviving spouse benefits are expressly exempt from collection to satisfy a money judgment. For that reason, she maintains that the judgment is "void."

¶ 64    At the risk of being redundant, we again note that any error by the court in its application of the Pension Code would render its judgment voidable, not void. See *McCormick*, 2015 IL 118230, ¶ 22 ("[T]he fact that litigants or the court may have deviated from requirements established by the legislature does not operate to divest the court of jurisdiction."). Regardless, the cited sections of the Pension Code and the Judgment Act do not apply to the distribution of marital assets and simply cannot be relied upon to defeat the court's judgment order.

¶ 65    Section 4-135 of the Pension Code states:

"No portion of the pension fund shall *** be held, seized, taken subject to, or detained or levied by virtue of any process, injunction, interlocutory or other order or judgment, or any process or proceeding whatever issued by any court of this State, for the payment or satisfaction in whole or in part of any debt, damages, claim, demand or judgment against any firefighter, or his or her beneficiaries ***." 40 ILCS 5/4-135 (West 2020).

¶ 66    Section 1006(a) of the Illinois Judgment Act states:

"A debtor's interest in or right to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts." 735 ILCS 5/12-1006(a) (West 2020).

¶ 67    Both of these provisions are examples of what has been characterized as antialienation provisions, the purpose of which is to protect employees and their beneficiaries from creditors. See *In re Marriage of Winter*, 387 Ill. App. 3d 21, 31 (2008); see also *Smithberg*, 192 Ill. 2d at 303-04 (determining the application of a provision prohibiting the alienation of employee benefits). However, Illinois courts have repeatedly held that a former spouse, who is a co-owner of pension benefits, is precluded from being labeled a creditor. *Winter*, 387 Ill. App. 3d at 31; see also *In re Marriage of Carlson*, 269 Ill. App. 3d 464, 471 (1995) (finding that the former wife was a co-owner of the former husband's pension, and she was not his creditor because she was only seeking to recover her interest in the pension benefits). This is because an employee's spouse has an ownership interest in the pension benefits as marital property, and in the dissolution of the marriage, those benefits may be allocated between the spouses in light of their respective ownership interests. *Id.*; see also *In re Marriage of Papeck*, 95 Ill. App. 3d 624, 629 (1981). As

such, antialienation provisions such as the ones set forth above do not bar former spouses' claims to those benefits. See *In re Marriage of Hackett*, 113 Ill. 2d 286, 292 (1986) (finding that section 4-135 did not preclude a holding that the proceeds from the firefighter's pension were classified as marital property); see also *Papeck*, 95 Ill. App. 3d at 629-630 ("[A] divorced wife is not in the position of a mere 'creditor,' and the anti-attachment provision of the Firemen's Act does not bar her claim to a certain proportion of the benefits.").

¶ 68    In fact, section 503 of the Dissolution of Marriage Act (750 ILCS 5/503(b)(2) (West 2020)) has effectively codified these principles of law by expressly providing that "[t]he recognition of pension benefits as marital property and the division of those benefits pursuant to a [QILDRO] shall not be deemed to be a diminishment, alienation, or impairment of those benefits." Therefore, these antialienation provisions are not applicable under these circumstances because pension benefits are expressly considered marital property and a former spouse is a co-owner of the benefits.

¶ 69    Therefore, Mary's argument that the pension benefits were exempt from collection is without merit.

¶ 70                              C. Procedural Due Process

¶ 71    Mary also argues that her right to procedural due process was violated when the circuit court proceeded with supplementary proceedings without complying with the applicable statutory requirements set forth in section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2020)). In particular, she alleges that Jodi failed to provide notice of her right to declare exempt certain income and assets and to serve on Mary an income and asset form. Again, she erroneously claims that this violation rendered the turnover judgment void and again, we note any error would be merely voidable, not void. See *McCormick*, 2015 IL 118230, ¶ 22 ("[T]he fact that litigants or the

court may have deviated from requirements established by the legislature does not operate to divest the court of jurisdiction.").

¶ 72    Regardless, section 2-1402 is not applicable here. That statutory provision authorizes supplementary proceedings by judgment creditors to discover assets or income of the judgment debtor. However, Jodi is not a judgment creditor, but is rather a co-owner in the benefits. See *infra* ¶¶ 67-68. And these are not supplementary proceedings to collect a debt. Jodi's motion for turnover of the judgment amount was presented pursuant to section 503 of the Dissolution of Marriage Act (750 ILCS 5/503 (West 2020)), which provides for the disposition of marital property. She did not institute citation proceedings as Mary contends.

¶ 73    Finally, Mary's assertions that her due process rights were violated are without merit where: (1) she could not declare the benefit payments exempt as explained above; (2) she was given the opportunity to make an alternative payment arrangement; (3) Jodi was not seeking any income other than that which the court had determined belonged to her as a co-owner; and (4) the court directed Mary to tender to Jodi a completed financial statement. A review of the record does not show any infringement of Mary's procedural due process.

¶ 74                                    D. Executive Order

¶ 75    Next, Mary argues that the circuit court erred in allowing the motion for turnover and subsequent proceedings "to advance despite an executive order and an Illinois Supreme Court Order halting such proceedings."

¶ 76    On April 14, 2020, the Governor of Illinois issued Executive Order 2020-25 in response to the COVID-19 pandemic. That order states, in pertinent part, as follows:

    "Section 1. During the duration of the Gubernatorial Disaster Proclamations, Section 5/12-705, 5/12-805, and 5/2-1402 of the [Code] *** that permit the service of a garnishment

summons, wage deduction summons, or a citation to discover assets on a consumer debtor or consumer garnishee, are suspended." Ill. Exec. Order 2020-25 (April 14, 2020).

¶ 77    The Illinois Supreme Court then issued an order staying certain supplementary proceedings until Executive Order 2020-25 was no longer in effect. That order was in effect until June 26, 2021.

¶ 78    Mary clearly misperceives the nature of these proceedings. Mary is not a consumer debtor and Jodi is not a judgment creditor. Thus, the executive order did not apply to this action. Further, the court's order mandating that Mary pay Jodi a judgment amount involved neither a garnishment or a wage deduction. Mary's argument is simply without merit.

¶ 79                                    E. Contempt Orders

¶ 80    Finally, Mary asserts that the contempt orders and the body attachment order are void because the underlying judgments upon which they rest are void for lack of subject matter jurisdiction. As we have explained above, those orders are not void and the circuit court at no point during these proceedings lacked subject matter jurisdiction. As such, we, again, reject Mary's voidness argument.

¶ 81    Mary additionally argues that the body attachment order must be vacated because the bond issued by the court was over $1,000, which she claims is in violation of section 12-107.5 of the Code.[3] That section provides:

_____

[3] In her reply brief, Mary states that on April 20, 2022, "Jodi voluntarily obtained an order quashing the August 19, 2021 [b]ody [a]ttachment [o]rder" and therefore this issue is moot. Mary includes a copy of the April 20, 2022 circuit court order stating that the August 19, 2021 attachment order has been quashed and the March 19, 2022 attachment order remains in effect. However, this order has not been made a part of the record on appeal, and we do not consider it. See *Keener*, 235 Ill. 2d at 346 (stating that the reviewing court cannot consider materials that were not included in the record on appeal). Regardless of any mootness, due to the nature of Mary's litigation in this matter, we find it prudent to address the merits of this issue.

"No order of body attachment or other civil order for the incarceration or detention of a natural person respondent to answer for a charge of indirect civil contempt shall issue unless the respondent has first had an opportunity *** to appear in court to show cause why the respondent should not be held in contempt." 735 ILCS 5/12-107.5(a) (West 2020).

¶ 82 It further provides that: "[t]he first order issued pursuant to subsection (a) and directed to a respondent may be in the nature of a recognizance bond in the sum of no more than $1,000." *Id.* § 12-107.5(d).

¶ 83 Mary misconstrues the purpose and application of this section. This section governs body attachment orders issued for the purpose of bringing an alleged contemnor before the court to answer for the charge of contempt. See *Root v. Carter*, 2021 IL App (4th) 200157, ¶¶ 16-17 (recognizing that the purpose of a body attachment order is to bring an alleged contemnor before the court to answer to the charge of contempt). Under those circumstances, a recognizance bond is appropriate.

¶ 84 Here, the body attachment order against Mary was issued after: (1) she received notice; (2) she was given the opportunity to show cause why she should not be held in contempt; (3) and she was adjudicated to be in indirect civil contempt. The court then gave Mary time to purge her contempt, *i.e.*, pay a portion of the amount owed to Jodi, before it entered a body attachment order and committed her to the jail. She did not purge her contempt and thus the body attachment order at issue in this case was entered. As such, section 12-107.5 of the Code is simply not applicable, and the body attachment order was not issued pursuant to that statutory provision. See *In re Marriage of Harnack and Fanady*, 2022 IL App (1st) 210143, ¶ 72 (rejecting this same argument).

¶ 85 Accordingly, this argument also fails, and the circuit court's contempt and body attachment orders are affirmed.

¶ 86                                    III. CONCLUSION

¶ 87     For the reasons stated, we affirm the judgment of the circuit court.

¶ 88     Affirmed.